UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DARRIN LAPINE,

           Plaintiff,           Case No. 1:19-cv-120

v.                                  Honorable Paul L. Maloney

ROBERT LINCOLN et al.,

           Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff's complaint was initially dismissed without prejudice on April 29, 2019, for failure to pay the filing fee after having three strikes. Plaintiff successfully appealed the dismissal of this action to the Sixth Circuit Court of Appeals (ECF Nos. 14, 15, and 17), and his case was reopened.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Heffbower, Trierweiler, Unknown Part(y)(ies) #2 named as Jane Doe MTU Hearing Investigator, and Unknown Part(y)(ies) #4 named as John Doe IBC Grievance Coordinator. The

Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Fourteenth Amendment due process claims and conspiracy claims.

## Discussion

I.     **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan. The events about which he complains, however, occurred at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan and the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Plaintiff sues the following Defendants: Robert Lincoln; Resident Unit Manager Unknown Traylor; CPC Unknown Desjarden; Corrections Officers Unknown Turvo and Unknown Hoppes; Prison Counselors Unknown Reed and Unknown Williams; Sergeant D. Hall; Unknown Part(y)(ies) #1 (named as Jane and John Does MTU Medical); Unknown Part(y)(ies) #2 (named as Jane Doe MTU Hearing Investigator); Grievance Coordinator Unknown Heffbower; Corrections Officer Unknown Kerr; Unknown Part(y)(ies) #3 (named as Jane Does IBC Medical); Unknown Part(y)(ies) #4 (named as John Doe IBC Grievance Coordinator); and Warden Tony Trierweiler.

Plaintiff alleges that he arrived at MTU at the end of September 2015. Plaintiff had a visit from attorney Mitch Foster. Following the visit, Plaintiff was strip searched by Defendant Lincoln. During the search, Defendant Lincoln stared at Plaintiff's nakedness and delayed his ability to get dressed, stating that convicts should not be able to meet with attorneys. Shortly thereafter, Plaintiff received a Notice of Intent (NOI) for excess legal material and his legal materials were confiscated. Defendant Lincoln saw Plaintiff and said that he had seen troublemakers like Plaintiff before, who filed grievances and lawsuits, and cost taxpayers money.

On November 17, 2015, Defendant Traylor told Plaintiff that if he did not sign off on a grievance against Defendant Williams he would have Plaintiff removed from the unit. Plaintiff filed a grievance. Subsequently, Defendant Traylor was heard telling other Black inmates that B-unit was full of gangbangers and that robbing white boys, assaults, and fights are commonplace. Within a couple of days, Plaintiff was moved to B-unit, where he was approached by gang members and threatened by staff. Plaintiff complained to Captain Nevills and was moved back to D-unit.

On December 12, 2015, Defendant Lincoln grabbed Plaintiff's penis/testicles and buttocks and squeezed hard, causing Plaintiff severe pain. Plaintiff called the PREA hotline and filed a grievance. On December 15, 2015, Defendant Lincoln had Corrections Officer Elsworth search Plaintiff, ostensibly in order to harass him. Plaintiff filed a grievance. On December 22, 2015 Defendant Lincoln called Plaintiff "La-Penis" and ordered him to the control center. (ECF No. 1, Page ID.4.) Once there, Defendant Lincoln said, "[Y]ou want to write grievances," touched Plaintiff's penis, testicles, and buttocks, and asked Plaintiff how it felt. (*Id.*) Defendant Lincoln then ordered Plaintiff to submit to a strip search and stared at Plaintiff's naked body while licking his lips. Defendant Lincoln ordered Plaintiff to lift his "junk" from side to side and then watched Plaintiff while he got dressed. (*Id.*) Defendant Lincoln then wrote a false misconduct on Plaintiff for smuggling, possession of stolen property, and theft. The misconduct was later dismissed. Plaintiff filed a grievance and wrote letters of complaint to the county prosecutor, state attorney general, and MDOC PREA coordinator, to no avail.

On January 26, 2016, Plaintiff filed another PREA complaint on Defendant Lincoln. On February 10, 2016, Plaintiff was refused use of the bathroom by Defendants Ball, Turvo, Hoppes, Desjarden, Reed, Williams, and Traylor, causing Plaintiff to urinate on himself.

Plaintiff had been refused use of the bathroom for two hours and forty-five minutes, was on blood pressure medication, and had the beginnings of incontinence from nerve root impingement in his spine.  Prior to this time, Plaintiff had sought medical treatment for various issues, filed several grievances, and still did not receive treatment.  Plaintiff alleges that, because staff at DRF destroyed Plaintiff's files from MTU and IBC sometime between November 30, 2018, and December 11, 2018, the unknown RNs and PA (Unknown Part(y)(ies) #1) cannot be discovered now.

After Plaintiff filed a grievance about the denials of his requests to use the bathroom, the parties named in the grievance began to threaten Plaintiff on a daily basis. Defendant Desjarden told Plaintiff that his grievance had resulted in the Deputy Warden and Warden being on employees' "asses," and that he would make sure Plaintiff was moved.  (*Id.* at PageID.6.)  After several threats were made, Defendants Desjarden, Turvo, and Hoppes told him that they would get a female officer to fondle him, and that Plaintiff might like that better.

On March 1, 2016, Corrections Officer Rivera conducted a pat down on Plaintiff. Immediately after, Defendant Desjarden, who had been sitting fifteen feet away, yelled that Plaintiff had committed a sexual misconduct.  Defendant Desjarden then wrote a false retaliatory ticket on Plaintiff stating that he had observed Plaintiff's hips thrust forward and back during the pat down.  Plaintiff was eventually found not guilty of the misconduct after an investigation, which included the review of video evidence.  Defendant Desjarden then sought out Muslim Moabite inmates and attempted to have them "take Plaintiff out."  (*Id.* at PageID.7.)  Plaintiff was warned by another inmate.  In addition, on March 7, 2016, Plaintiff overheard staff saying that the hit would go down at about 10 a.m.  Plaintiff then went to the sergeant and lieutenant in the chow hall

and requested protection. Plaintiff's request was denied. Plaintiff then went to his cell and refused to come out.

On March 8, 2016, Plaintiff ventured into the day room and sat in the direct view of the officers' station. Plaintiff's friend told him to be careful and went to place a store order. At that point, inmate Taylor-Bey #222685 threw bleach water in Plaintiff's face and began punching him in the face and head. Plaintiff fell on the kiosk and was knocked unconscious. Plaintiff was then taken to medical, where water was splashed on his face, and was then was taken to segregation. Plaintiff was suffering from a bloody and broken nose, a split lip, chipped teeth, nausea, vomiting, and dizziness, and had fluid leaking from his ears. Plaintiff's pleas for treatment were ignored. Defendant Hall later came to take his statement and again refused Plaintiff's requests for medical care. Inmate Taylor-Bey was later charged with assault, but the ticket was dropped shortly thereafter. Within a few days, inmate Taylor-Bey had been returned to his cell as if nothing had ever happened. However, Plaintiff was kept in segregation for three weeks and was never given medical attention.

During the time that Plaintiff was in segregation, he was denied a pillow, clean clothes, heat, toothpaste and a toothbrush, soap, and cleaning supplies. Plaintiff states that his cell was filthy and that his mattress was full of tears, blood, and feces stains and stank. Plaintiff was denied seven meals in a row. Plaintiff was on modified access and requested a grievance form, but Defendant Heffbower denied his request. Plaintiff wrote thirteen kites seeking medical attention, to no avail. Plaintiff states that the mattress caused further damage to his spine, which was already extremely painful. One day, Plaintiff complained to Captain Nevills, who said that he could not believe that Plaintiff was still in that condition and had not been treated or transferred. Nevills told Plaintiff that he had been placed on a transfer list by the Resident Unit Manager and

5

wished Plaintiff good luck.  After that, an unknown staff member walked by and told Plaintiff that "Lincoln says hello."  (*Id.* at PageID.9.)  Plaintiff states that the hearing investigator did not investigate and that Sergeant Moore's investigation was suppressed.  Plaintiff also claims that Deputy Melinda Braman had contact with Hearings Officer Morris regarding Plaintiff in violation of MDOC rules.  Defendant Desjarden came to the segregation unit and asked Plaintiff what it felt like to get his face smashed in.  Defendant Desjarden also stated, "I bet you['re] not writing grievances and pissing yourself over here, Lincoln said he misses you too."  (*Id.*)

On or about the end of March or beginning of April, Plaintiff was transferred to IBC, where Defendant Kerr stated that he knew everyone at MTU and that Plaintiff would not be filing grievances and PREA complaints.  Defendant Kerr told Plaintiff that he had something for him.  Plaintiff requested a grievance form, to no avail.  Plaintiff's requests for medical treatment for his injuries were not answered.  Approximately one week later, Plaintiff was in health services when Defendant Kerr stated, "There is nothing wrong with you LaPine.  That ass beating you got was just what you needed, Desjarden says so."  (*Id.* at PageID.10.)  An unknown nurse told Plaintiff that she would have to reschedule him because they were busy.  Plaintiff explained his symptoms but was merely told to re-kite.  Plaintiff never received a response to any of his kites or grievances.

Plaintiff alleges that sometime later, he was called to medical, where his vitals were checked by a nurse, but no treatment was given for his injuries.  Plaintiff was told that he would be called back by a provider.  Defendant Kerr smiled at Plaintiff and told him that he knew there was nothing wrong with him.  Plaintiff requested grievance forms and filed kites but received no response.

On April 20, 2016, Plaintiff arrived for a medical appointment, but Defendant Kerr let every other prisoner go before Plaintiff.  When Plaintiff complained, Defendant Kerr said that

6

there was nothing wrong with Plaintiff and he could either sign off and leave or wait. Plaintiff stated that he was going to wait because he needed to be seen by a provider. Plaintiff stated that he planned on filing grievances and that if he did not receive a response, he was going to sue. Defendant Kerr yelled that if Plaintiff threatened him again he would see him in segregation. Shortly thereafter, Defendant Kerr falsified a misconduct ticket for threatening behavior and Plaintiff was taken to segregation. The ticket falsely stated that Plaintiff had said, "he better be seeing a doctor, they have no idea of what I can do." (*Id.* at PageID.12.) No investigation was conducted on the misconduct, and only one of Plaintiff's grievances was responded to at step I.

Plaintiff was subsequently transferred to LRF level IV, despite the fact that Plaintiff was a level I prisoner. Upon his arrival at LRF, an unknown employee told him that she had gotten a call from DRF instructing her to go through Plaintiff's property and take everything she could. (*Id.* at PageID.12.) She subsequently took Plaintiff's legal property, headphones, food, and glasses. Plaintiff sent a NOI to the Court of Claims on each issue but did not receive a response. Plaintiff learned that the same MTU staff who had Plaintiff assaulted had also arranged for other inmates to be assaulted. Plaintiff claims that he was later assaulted by Moabites on three other occasions while he was confined at JCF, JCS, and DRF. Plaintiff also learned that Defendant Desjarden had been reassigned to a different unit because of Plaintiff's claims against him.

Plaintiff claims that as a result of the assault by inmate Taylor-Bey at the behest of Defendant Desjarden, and the subsequent denial of medical treatment, he suffers from permanent damage to his spine, nervous system, brain, nose, eyes, ears, lips, and teeth. Plaintiff states that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments. Plaintiff also claims that Defendants engaged in a conspiracy and that their conduct violated state law. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Defendant Tony Trierweiler

Plaintiff fails to make any factual allegations against Defendant Trierweiler, but appears to name him solely because of his position as warden. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Trierweiler engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against him.

### IV. No right to file a grievance

Plaintiff's only claims against Defendants Heffbower and Unknown Part(y)(ies) #4, named as John Doe IBC Grievance Coordinator, are that they interfered with his ability to file grievances. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison

9

grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, the conduct of Defendants Heffbower and Unknown Part(y)(ies) #4 did not deprive him of due process.

Nor was Plaintiff's First Amendment right to petition the government violated by the failure of Defendants Heffbower and Unknown Part(y)(ies) #4 to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).

Moreover, the actions of Defendants Heffbower and Unknown Part(y)(ies) #4 have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415-16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D.

10

Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470-71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff's First Amendment right to petition the government claims against Defendants Heffbower and Unknown Part(y)(ies) #4 named as John Doe IBC Grievance Coordinator are properly dismissed.

V.   **Seizure of property**

Plaintiff claims that his property was seized in violation of his due process rights. Specifically, Plaintiff alleges that upon his arrival at LRF, an unknown employee told him that she had gotten a call from DRF instructing her to go through Plaintiff's property and take everything she could. (*Id.* at PageID.12.) She subsequently took Plaintiff's legal property, headphones, food, and glasses. Plaintiff sent a NOI to the Court of Claims on each issue, but he did not receive a response. The Court notes that Plaintiff fails to specify any of the named Defendants in relation to this claim.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a

11

plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Because Plaintiff fails to attribute the seizure of his property to any specific Defendant, this claim is properly dismissed.

Moreover, Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition

the institution's Prisoner Benefit Fund for compensation.  Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013).  Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board.  Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (eff. Oct. 21, 2013).  Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers."  Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013).  The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property.  *See Copeland*, 57 F.3d at 480.

Plaintiff does not allege that he pursued a claim with the State Administrative Board.  In addition, although Plaintiff states he sent a Notice of Intent to the Court of Claims, he does not state that he actually instituted a legal action in the state courts.  Plaintiff has failed to allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.  Accordingly, Plaintiff's claim regarding the seizure of his property is properly dismissed.

**VI.    Defendant Unknown Part(y)(ies) #2 named as Jane Doe MTU Hearing Investigator**

Plaintiff states that an unknown hearing investigator at MTU failed to investigate an unspecified misconduct.  As stated above, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiff fails to specify any of the facts surrounding the alleged misconduct, including the date or reason it was issued, or even whether Plaintiff was the recipient of the misconduct.  Therefore, Plaintiff's claim against Defendant Unknown Part(y)(ies) #2 named as Jane Doe MTU Hearing Investigator is properly dismissed.

## VII. Conspiracy

Plaintiff claims that Defendants engaged in a conspiracy to retaliate against him for his use of the grievance procedure. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete facts that occurred over a period of time involving numerous individual officers. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on a highly attenuated inference from the mere fact that he has been disciplined by or subjected to objectionable treatment by a variety of prison officials in various circumstances with which he disagreed. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state

a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. In light of the far more likely possibility that the various incidents occurring over the long history of Plaintiff's incarceration were unrelated, Plaintiff fails to state a plausible claim of conspiracy.

## VIII. Remaining claims

The Court concludes that Plaintiff's complaint sets forth sufficient factual allegations to state retaliation claims against Defendants Lincoln, Traylor, Kerr, Desjarden, Turvo, and Hoppes, as well as Eighth Amendment and state law claims against Defendants Lincoln, Traylor, Ball, Desjarden, Turvo, Hoppes, Reed, Williams, Hall, Unknown Part(y)(ies) #1 (named as Jane and John Does MTU Medical), Kerr, and Unknown Part(y)(ies) #3 (named as Jane Does IBC Medical).

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Heffbower, Trierweiler, Unknown Part(y)(ies) #2 named as Jane Doe MTU Hearing Investigator, and Unknown Part(y)(ies) #4 named as John Doe IBC Grievance Coordinator will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Fourteenth Amendment due process claims and conspiracy claims. Plaintiff's retaliation claims against Defendants Lincoln, Traylor, Kerr, Desjarden, Turvo, and Hoppes, and his Eighth Amendment and state law claims against Defendants Lincoln, Traylor, Ball, Desjarden, Turvo, Hoppes, Reed, Williams, Hall, Unknown Part(y)(ies) #1 named as Jane and John Does MTU Medical, Kerr, and Unknown Part(y)(ies) #3 named as Jane Does IBC Medical remain in the case.

An order consistent with this opinion will be entered.

Dated: January 14, 2021                              /s/ Paul L. Maloney
                                                                         Paul L. Maloney
                                                                         United States District Judge