UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D<small>ARRIN</small> L<small>A</small>P<small>INE</small>,

   Plaintiff,          Hon. Jane M. Beckering

v.                 Case No. 1:22-cv-676

R<small>OBERT</small> L<small>INCOLN</small>, et al.,

   Defendants.

_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant Unknown Kerr's Motions for Partial Summary Judgment. (ECF No. 68). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be granted.

**BACKGROUND**

Plaintiff[1] initiated this action on February 14, 2019, against twelve named individuals and an unknown number of John and Jane Does. (ECF No. 1). Many of Plaintiff's claims were subsequently dismissed. (ECF No. 19-20). Plaintiff's

---

[1] When Plaintiff initiated this action, he was a prisoner within the custody of the Michigan Department of Corrections. Plaintiff has since been released from custody.

-1-

remaining claims were later severed into three separate actions. (ECF No. 48-49). The claims remaining in this action are as follows.[2]

### A. Count 15

On an unknown date "about the end of March or beginning of April 2016," Plaintiff was transferred to IBC. Upon Plaintiff's arrival at IBC, CO Unknown Kerr stated to Plaintiff, "so you want to write grievances and PREA complaints. . .your (sic) not going to be here long doing that." Plaintiff alleges this encounter violated his right to be free from unlawful retaliation.

### B. Count 17

On April 20, 2016, Plaintiff went to health care for "a medical appointment with nursing." After watching approximately 20 other inmates receive medical care, Plaintiff asked CO Kerr, "am I going to see medical, I'm way past my callout time?" Kerr responded, "you've been here 3 times, nothing is wrong with you, you can sign off and leave or wait." Plaintiff responded to Kerr by stating, "I'm not signing off. I need to be seen by a provider" and "if not, I'm going to file my grievances, and if no response, I will file suit again." In response, Kerr falsely charged Plaintiff with threatening behavior. Plaintiff alleges that Kerr took this action for unlawful retaliatory reasons.

---

[2] As the Court has previously noted, while Plaintiff does not identify his claims on a count-by-count basis, the Court does so for the sake of clarity.

Defendant Kerr now moves to dismiss Count 15 on the ground that Plaintiff has failed to properly exhaust his administrative remedies.[3] Plaintiff has responded to the motion. The Court finds that oral argument is unnecessary. *See* W.D. Mich. LCivR 7.2(d).

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case." *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). The existence of a mere "scintilla of evidence" in support of the non-

---

[3] While Plaintiff is no longer in MDOC custody, he was incarcerated when he initiated this action. Accordingly, the exhaustion requirement articulated in the Prison Litigation Reform Act applies to Plaintiff's claims. *See, e.g., Hicks v. Haynie*, 2020 WL 8474737 at *4 (W.D. Mich., Dec. 21, 2020).

moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006). Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735. Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 2021 WL 1257802 at *4.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).

Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). Accordingly, summary judgment in favor of the party with the burden of proof "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action regarding prison conditions under 42 U.S.C. § 1983 must first exhaust his administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). This obligation only extends, however, to such administrative remedies as are available. *Ross v. Blake*, 578 U.S. 632, 642 (2016) (a prisoner "must exhaust available remedies, but need not exhaust unavailable ones").

Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Ibid*.

With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner must attempt to resolve the issue with staff, unless prevented by circumstances beyond his control, or the issue falls within the jurisdiction of Internal Affairs. MDOC Policy Directive 03.02.130 ¶ Q (Mar. 18, 2019). The prisoner must attempt to resolve the matter within two days of becoming aware that there exists a grievable issue. (*Id.*).

If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance, but such must be submitted within five business days after attempting to resolve the matter with staff. MDOC Policy Directive 03.02.130 ¶ W (Mar. 18, 2019). The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC Policy Directive 03.02.130 ¶ S (Mar. 18, 2019).

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. MDOC Policy Directive 03.02.130 ¶ DD (Mar. 18, 2019). If the prisoner is dissatisfied with the

Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. MDOC Policy Directive 03.02.130 ¶ HH (Mar. 18, 2019).

Defendant has have submitted evidence demonstrating that Plaintiff has failed to exhaust the claim asserted in Count 15. (ECF No. 69 at PageID.303-582). In response, Plaintiff has submitted evidence suggesting that he exhausted certain other claims, but Plaintiff has presented no evidence creating a genuine factual dispute that he exhausted the claim asserted in Count 15. In this respect, Plaintiff's vague assertion that he was unable to submit a grievance because he was on modified grievance access is insufficient.

Pursuant to Michigan Department of Correction (MDOC) policy, a prisoner can be placed on modified grievance status as a sanction for filing an "excessive number" of rejected grievances. MDOC Policy Directive 03.02.130 ¶ JJ (eff. Mar. 18, 2019). When on modified grievance access, a prisoner is permitted to file a grievance only if he first requests a Step I grievance form from the Step I Grievance Coordinator. *Id.* at ¶ MM. If a prisoner on modified grievance access "attempts to file a grievance using a form not provided by the Grievance Coordinator, the Grievance Coordinator may reject the grievance in accordance with" MDOC policy. *Id.*

Plaintiff has presented no evidence that he was on modified grievance access when the events giving rise to Counts 15 occurred. Moreover, even if the Court assumes that Plaintiff was on modified grievance access during the relevant time period, the result is the same. Plaintiff's statement that he "attempted" to file a grievance, (ECF No. 71 at PageID.642), lacks any detail or specificity. It fails to identify the date(s) on which

Plaintiff allegedly attempted to file a grievance, the issue(s) Plaintiff attempted to grieve, or the individual(s) against whom the grievance was asserted. Plaintiff's statement is little more than a legal conclusion and fails to present facts sufficient to create a genuine dispute on the question whether Plaintiff exhausted the claim in question. Accordingly, the undersigned recommends that Count 15 be dismissed without prejudice for failure to exhaust administrative remedies.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendant's Motions for Partial Summary Judgment (ECF No. 68) be granted and Count 15 be dismissed without prejudice for failure to exhaust administrative remedies. For the same reasons the undersigned makes this recommendation, the undersigned finds that an appeal of such would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the undersigned further recommends that an appeal of this matter by Plaintiff would not be in good faith.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                      Respectfully submitted,

Date: March 27, 2023                  /s/ Phillip J. Green
                                                PHILLIP J. GREEN
                                                United States Magistrate Judge